The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, Oyez, Oyez, Oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nines and give their attention, for the Court is now sitting. God send the United States to this Honorable Court. Thank you, and be seated. Welcome to the Fourth Circuit, and we're ready to hear argument in our first case, LVNV Funding v. Harling et al.'s, Mr. Bock. Thank you, Your Honor. Adam Bock on behalf of the appellant LVNV Funding. The question before this Court today is whether a Chapter 13 bankruptcy plan confirmation will provide the finality and certainty of race judicata consistent with the provisions of 11 U.S.C. 1327A and this Court's holdings in the recent case of covert, or whether, as the debtors argue, it is nothing more than permission for the estate and the trustee to begin making payments to certain creditors provided for under the plan. The facts in both appeals, there's two cases before the Court on appeal today, the Harling case and the Rhodes case, and the facts are very similar with really only one distinction. In both cases, the debtors filed Chapter 13 bankruptcy. In both cases, LVNV filed a proof of claim prior to plan confirmation. In both cases, the plan was confirmed. And in both cases, the debtors objected following plan confirmation based on statutory state law statute of limitations defenses. Well, for purposes of race judicata, what do you say is the inconsistency between the confirmed Chapter 13 plan and the later determination by the bankruptcy court with respect to proofs of claim? At the time that the plan is confirmed, it provided for pro rata payments to general unsecured creditors. As a class. As a class, correct, Your Honor, which was precisely the same situation this Court faced in the covert case. In the covert case, LVNV filed as a general unsecured creditor. I thought in covert there was a claim by the debtors, in effect, to add additional assets by bringing a claim against one of the debtors. That's correct, Your Honor, but the impact on race judicata that the Court discussed in covert was the fact that the post-confirmation claims would undermine the claim validity. I believe the court in covert specific. There was no reservation in covert. That's correct, Your Honor. Why doesn't that make a difference in your analysis? Because the principles that underline the covert decision, whether or not any rights are decided on behalf of the creditors at plan confirmation, are implicated regardless of whether or not there is a reservation of rights. And so the court in covert was very clear, and to understand why the general reservations have been rejected by most of the circuit courts. Go back, though, and tell us what is the inconsistency with the Chapter 13 plan as confirmed and the determinations by the bankruptcy court later of whether or not to allow or disallow any of the various proofs of claim? The court in covert was very clear that the. . . I want you to just tell me simply. Oh, I'm sorry. What's the inconsistency? How is the bankruptcy court's determination of the validity of a proof of claim inconsistent with the confirmed plan? The confirmed plan contains part of the issue that is determined in the confirmed plan is that the claim is valid, that it has been validly filed, that there are not, as the covert said. Where does it say that? That comes from the covert case. And so the covert case stated that the post-confirmation claims undermine the proof of claim because they would challenge either the claim's legality or whether or not it had technical deficiencies. We're just not. . .we're not syncing up here. I'm not understanding how the bankruptcy's determination of a proof of claim is inconsistent with the terms of the Chapter 13 plan because the plan says, divides up each class, so you have a class of unsecured creditors, and the unsecured creditors are going to get X, whatever X is. But the Chapter 13 plan doesn't say anything about a particular creditor's entitlement to a portion of X. I would say that the plan states that approved claims will receive a pro rata share, and I apologize, I don't have the exact language, but I believe that's what it states, that allowed claims will be able to share in a pro rata. Isn't that what would happen under the plan as the bankruptcy court determines which claims are allowed and not claimed? And again, I think that that's where it comes back to you. What happens at plan confirmation? At plan confirmation, is it simply that the debtors are permitted to begin making payments, or as the court held in Covert and other circuits have held, is that a final determination on the merits, a res judicata determination with respect to claims that were raised, could have been raised, or issues that were necessarily determined by the company? How do you see, what effect do you think plan confirmation has on a creditor's proof of claim? Well, it's binding under 1327A, obviously, on the debtor and the creditor, but at heart, the purpose of plan confirmation is to give a reference point in the bankruptcy case from which, as Judge Duncan has said, all further rights or determinations are supposed to be made with reference to the plan. Okay, you're not answering the question. How does the plan, the Chapter 13 plan's confirmation, how does that affect the validity of the various proofs of claim? In our opinion, under this court's jurisprudence and others, it is a holding that those claims are valid to the extent that no objection has been raised prior to them. Well, in this case, as is the case, I would say, 99-plus percent of the time in all bankruptcies across the country, you have the claim bar date falling a month to two months after the confirmation of the plan. As I understand your position, it is that proofs of claim fall before the bar date, which could be, in these cases, two months after the plan is confirmed that those claims are valid. No, sir, Your Honor. Race judicata would not apply to any claim that had not been filed prior to plan confirmation. So do you cite any case from any bankruptcy court or anywhere in the statute or the bankruptcy rules that says you treat claims differently that are validly filed before the bar date, that are within the same class? I believe, and I apologize, I don't have the citations, but I believe we have cited cases where that exact issue is addressed. And courts have said, for example, the Seventh Circuit and the N. Ray Porter decision, which was a bankruptcy court out of Vermont, there's no concern about post-filed claims after confirmation because there's no race judicata effect for that claim. Nothing has been determined about that claim. They were not a part of the original plan confirmation process. So if you file your claim two days before plan confirmation, it's your view that the trustee, all the other parties of interest, the debtor, their attorneys, are by the time of the plan confirmation to have made their due diligence and filed an objection by that time. Otherwise, the claim is allowed. No, Your Honor. Our position would be that prior to plan confirmation, for example, in the situation you just gave, that they need to specifically identify the claim that was filed two days earlier. And so that claimant has notice, is on notice that they have issues that may be raised going forward, that there needs to be a specificity there so that a claimant knows because there's no other point in the bankruptcy process. Can you identify any district anywhere in the country that follows that procedure? I'm not familiar with precisely that situation, but the cases that we've cited dealing with the general reservation language And then, I mean, I would respectfully say this circuit, in the absence of general reservation language, would follow that rule, that under covert, if a plan is confirmed, an objection can't be raised, you know, following plan confirmation. And that's, you know, really the issue here is whether or not the general reservation is sufficient. We would argue that for the reasons that have been stated in other circuits, particularly the Seventh Circuit, that a general reservation, a reservation that seeks to reserve everything, reserves nothing. In this case, the issues that we have are twofold. First, the standard South Carolina plan under Paragraph 4 contains the language, confirmation this plan does not bar a party in interest from objecting to a claim. It goes on to say, and I would point out that that language is in the introduction to Paragraph 4, which then deals with payments. So, for example, in the Nix case, which is cited in our brief, that was a secured creditor's claim. It was objected to prior to plan, or I'm sorry, following plan confirmation, based on this language and on the language contained in Paragraph 5, which says nothing herein is intended to waive or adversely affect any rights of the debtor, the trustee, or party with respect to any causes of action. That takes me back to our initial question and answer, because I'm still not understanding what inconsistency that creates with the reservation of rights to the plan as confirmed. And the issue is whether or not it is consistent with 1327A and the principles of res judicata. And the problem that we have is that there is no opportunity in the entire bankruptcy process for a creditor to gain certainty over their claim other than at plan confirmation. It is supposed to be the point at which. What about when they have the hearing on whether or not the claim is allowed? Well, there's no— Assuming there's an objection. Yes, Your Honor. And there's no—exactly. And so under 11 U.S.C. 502, the claim is valid until there is an objection. And so for a creditor like my client, it could be until the—you know, for example, in the Harling case, the payments under that case were under a 60-month schedule. So for five years, a creditor essentially has no idea what their rights are under plan confirmation, which we believe speaks against the intent of the Bankruptcy Code and the res judicata purpose of plan confirmation. And that plays itself out in a number of different ways for a creditor, because a creditor's participation— Then why didn't you object to the reservation in the plan? The issue with objecting the reservation in the plan ahead of time is that we have no idea if they're talking about us. And so it raises two issues. First— It would be a reason to object. Well, what we would like to avoid is the situation where creditors are forced to object to all plans in South Carolina, show up at an objection hearing only to have the debtor look at us and say, Your Honor, we weren't talking about them. This isn't a claim that we intended to object to. or even more prejudicial to a creditor's rights, if we raise that issue prior to plan confirmation, the court is going to ask us what concerns we have, which essentially forces us to be a defendant in our own case. Do we have to come forward at the objection to the plan hearing and say, We're worried about an FDCPA violation. Oh, Mr. Bach, well, why are you worried about that? We don't want to— Nothing in the adversarial system requires us to sort of do the other side's homework. And so if we have— Your argument only goes to a subset, though, of the class of creditors, because you've already agreed, as I think would be the practice in, I'm guessing, every district in the country, you have this mass of claims that's filed after the plan confirmation but before the bar date. And your argument wouldn't affect any of those. That is correct, Your Honor. I don't believe that in any context that this court has ever considered res judicata. And, in fact, this court has specifically stated in In Re Veric, if you can't know about it beforehand, if there's no way of knowing that the claim or the claim hasn't arisen yet, I mean, no claim for an objection has arisen or the claim itself if it is not filed until after confirmation. I mean, the debtor is not bound by res judicata for an objection that they could not make. So the issue, as this court pointed out in covert, is that because plan confirmation encompasses both aspects of res judicata, both claim and issue preclusion, could the debtor have raised their objections prior to plan confirmation? And, really, that's the question. And there are situations. There will be situations in which debtors who participated pre-confirmation— But there wasn't a reservation in the covert plan, was there? No, there was not, Your Honor. That's correct. So doesn't that undercut your entire argument here? Well, our argument is that, like as other circuits have recognized, the majority of circuits in courts have recognized a reservation that seeks to preserve everything reserves nothing. But it doesn't, in this case, seek to preserve everything. Well— Doesn't it simply seek to preserve allowed claims? Well, it actually—it goes— How does it seek to preserve everything? Tell us that, because I don't think that's made clear in your presentation. Yes, ma'am. Paragraph 4 states, Confirmation of this plan does not bar a party in interest from objecting to claims. So objections can come from any source, and party in interest is defined extremely broadly. Third parties, creditors' committees, trustees, everyone. So your claim is still there to be shot at by about any party available in the bankruptcy proceeding. But then it goes on, and it expands that. Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any cause of action owned by the debtor. So all objections are preserved. All claims are preserved. So there really is—I'm certain that there is probably something I'm overlooking that may be barred, but I simply cannot— Certainly, you'd have to agree that the class action cause of action in covert would be barred. Well, it would be, not under this language. I think that the court would probably step in at that point and say, to the extent there was an objection. But, I mean, the class action claim in covert, I think, would fall within this reservation. Is it preserved in this language? Well, I don't because I don't think it's specific enough. Right, right. But it certainly could be brought. I mean, there's nothing in here. I mean, they have stated that they don't intend to waive or adversely affect any right. I don't know what that would not encompass. Well, what about reality here, Mr. Bach? Do these general unsecured creditors ever get paid before the plan is underway? You know, you're talking about waiting five years. But isn't the reality the situation that they don't get paid until the plan is underway, ever? That is—plans will not begin until the plan is underway. That's correct. And generally, there is a waiting period. But for us, that reemphasizes the importance of allowing general unsecured creditors or any class of claims to have some certainty about where they stand following plan confirmation. Because, as I was stating earlier, creditors participate in bankruptcy in a number of ways. I mean, we can file objections to other claims that are filed. We can seek to set aside liens. We can initiate—seek to initiate preference or adversary actions. So there's a whole host of actions a creditor might take. But why would any creditor take any action if they have no idea if they're ever going to be treated as they're stated they're going to be treated under the plan? I mean, so how do you advise your client? Yes, I agree that this claim that's been filed is invalid or this lien is invalid. But I can't tell you whether or not you filing an objection will ever be any benefit to you because your claim may be objected to years from now. Or there may be an FDCPA claim that I haven't seen lurking around the corner. So, Your Honor, that's why we believe that the fundamental issue—and I'm sorry. I see that I'm out of time. But as this Court stated, finality is the fundamental purpose of both race judicata and plan confirmation, as stated in covert. And that is completely undone by general reservation language, which is why most circuits who have looked at this issue in courts have stated that it is not permitted. Thank you, Mr. Brockett. You've got some time left on rebuttal. Ms. Downey? Good morning. May it please the Court. My name is Jane Downey. I am speaking today on behalf of the appellees, which consists of the Harlings and also Mr. Rhodes. Thirty years ago, I sat in a 1L contracts class, and I listened to Professor Cole at Emory University ask, what is really going on here? And in every case we studied, he asked, what is really going on here? So I thought about that in the terms of all of these cases and whether there were really inconsistencies. And I don't think there are inconsistencies. I think that what is really going on here is that the courts are trying to maximize the return to creditors. The debtors are looking for a fresh start, and the creditors are looking for adequate information, similar to what the disclosure statement requires in a Chapter 11 case, so that the creditors can weigh the income, the disposable income of the debtors, and also the assets that might be available, and in the spirit of a bankruptcy, compromise and receive what they are entitled to receive, the maximum that they are entitled to receive. And all of these cases look into what the intent of the debtor was. So, for example, in our case, we are objecting to a claim. That is very different than all of these other cases. All of these other cases are a situation to where the debtor is asking for money from a creditor. The debtor is bringing, like, a Fair Debt Collection Practices Act, or the debtor is in some way suing the creditor. And also in these other cases, the debtor is doing so way down the line after the bankruptcy is over, after the time period for the creditors to have voted on the plan, say, in a Chapter 11 case. In other words, the debtors are filing a bankruptcy case. They're allowing the claim to be paid. They are paying the claim in the bankruptcy case. The bankruptcy case ends, and then the debtors are going into another court, and they're suing to recover on the exact cause of action that they had paid in the bankruptcy case. And that's what the courts are saying is not allowed. The courts are saying creditors need to know what the pot of money is. And if there's excess after the bankruptcy and you didn't disclose that during the bankruptcy, then, debtors, you are not going to get the personal gain. You are not going to get to benefit at the exclusion of creditors in this recovery. And so they're saying that that is the collateral attack. As you recognize, the claims process is completely separate from the plan confirmation process. It's a two-step process. And what the plan confirmation process does is it says, if you have an allowed claim, this is how we'll pay your claim. The claims process is completely different. It goes to the crux of how much are we going to pay you. And even in some of the cases that the debtor cited, I'm sorry, that the appellant cited in the brief as being inconsistent with Judge Duncan's opinion, I think that they're actually similar to Judge Duncan's opinion. And when I say that, I mean that only the South Carolina plan has this express reservation of rights. You're exactly correct. The covert plan did not have the express reservation of rights. What the covert plan did have is a paragraph, I believe it was 2Ei, that said, prior to confirmation, the following creditors will be paid prior to confirmation. That was to protect creditors who have depreciating collateral, such as car creditors. That's what the intent of our exclusion in South Carolina is. We aren't saying in our plan that anybody will get paid before confirmation. Instead, we're saying we're going to have an early confirmation, and then we're going to expressly carve out the right for creditors to have claims objections. And if you look at the Genn case and the Nix case, our previous bankruptcy cases in South Carolina have said that. So, for example, both of those cases are where secured creditors were not allowed to bring this second collateral attack. However, in both of those cases, the judge covered what's going on in our case. Specifically, in the Genn case, the court Judge Burr has held, just as in Nix, the language of the confirmed plan and the facts of this case prevent plaintiffs from challenging city mortgages claim or asserting causes of action based on pre-confirmation conduct, except for challenges to the allowance of claim. That's what we have here. So your opposing counsel says that, as would be relevant to this case, in the class of unsecured creditors that the class is to be bifurcated and that one set of rules and expectations applies to those who happen to file before confirmation of the plan, and a different set applies to those who would file after the plan. Can you respond to that argument? Yes, Your Honor. That would be a nightmare for the trustees. First of all, the parties that can object to a claim are not just the debtor. They're not just the trustee. They are other creditors. Other creditors can object to claims. Now, there is nothing in the South Carolina notice that informs creditors that if they don't object to the claim, that the claim is going to be allowed. So the first problem would be notice to those other creditors. Secondly, what Mr. Bach is promoting is to say the night before confirmation, he can file a claim. That is going to stop confirmation in its tracks because I would have to then inform the court that my plan does not provide for his claim and that I needed to delay confirmation so that I could file an amended claim. It won't provide for his claim in the sense that whatever claim he would have would be part of a class. So the class would be unaffected because there's only going to be so much money to pay the class, correct? Correct. So from that standpoint, that would not change the payout to the class. It would not change the payout to the class at all. My understanding is that what Mr. Bach is wanting is that if his client individually files a claim, that my plan must specifically say that I am going to be objecting to his claim. The only way that I can think of that what he's advocating would work is if the night that he files his claim and then I have confirmation the next morning at 9 a.m., by maybe 8.30 a.m., I file an objection to the claim. And then that process might let the claims go forward and the confirmation go forward. If I have to specify in my plan that he filed a claim the night before and I object to his claim, I can't get my filed plan confirmed. And one reason that I couldn't just file it the next morning by 8.45 is that creditors have to have notice. So then that would start the whole 28-day notice process all over again, and it would just continue to delay confirmation. So I think what is going to end up happening is either the form plan is going to have to be rewritten or it's going to be a matter of, in South Carolina, plans don't get confirmed not just before the bar date, but some period of time after the bar date for the trustee and creditors and the debtor to review the potential objections and file those objections. That's going to really hurt creditors who have depreciating collateral or mom-and-pop landlords who are trying to get their rent paid. It's just not going to serve the policy purpose. Whereas LVNV is under no prejudice by the language the way that it is. It's an express reservation that has always been used, and it is the form plan. And if we make drastic changes to the form plan, that's frowned upon. We have to have a cover sheet and different notices if we drastically change it. The opposing counsel says that the language in the South Carolina plan expressing the reservation of rights is not specific enough for race judicata purposes. So what's your response to that? Well, I think that has already been addressed by the South Carolina courts. I quitted to you already what Jen— They're not a court of appeals, though. Yes, Your Honor. So as far as answering your question, I think that it is in the plan more than one time. So first of all, we have the notice. We have the notice that goes out not only to the other creditors that they have the right to object to the plan, but we have the notice to LVNV, just as Judge Thacker said, that the LVNV could have objected to the express reservation if it thought that it was not specific enough. It could have said, we don't think that your reservation is specific enough. The terms of the plan by which LVNV became bound first had in paragraph 4 that the claim had to contain adequate information, sufficient documentation. You will recall from our briefs that these debts were never scheduled in the debtor's bankruptcy. The debtors did not think that they owed these debts to LVNV or the underlying creditors, so they did not schedule them. They didn't appear on the credit reports. The debtors didn't have remembrance of them, and so they weren't listed. When LVNV filed its claim, my position is that they were on notice, that they had to have adequate supporting documentation with the claim. They contained a summary, nothing proving the substantiation of the debt. Then secondly, there is the provision that expressly says, confirmation of this plan does not bar a party in interest from objecting to the claim. That is separate from our general reservation of rights that later on says, nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party with respect to any causes of action owned by the debtor. And finally, in section E, we have a provision for general unsecured creditors, as you mentioned, and general unsecured creditors shall be paid allowed claims pro rata. So this creditor was on notice that it had to have an allowed claim to be paid. This process was not determining what claims were allowed. There was no notice to any other creditors that this plan confirmation process was the claims allowance process. So to answer your question, the creditor had noticed that for it to receive anything under the unsecured creditors portion, that claim had to be allowed. Now, that couldn't be allowed in the plan confirmation process because plan confirmation gives creditors 28 days to object to a plan. The claims allowance process is completely separate. As you see from the record on the peel, I had to do a separate package and I had to give a 30-day notice to LVNV of the objection to claim. So I believe that there are various provisions. There's the notice, there's the express provision, there's the general provision, there is the requirement for adequate documentation, and there's the requirement that the claim be allowed to get paid. And that would be my answer to your question, Your Honor. In addition, the South Carolina form plan expressly provides for this provision and other cases do not. I don't think that in the other cases that the court was knocking down the general reservation pro se. I don't think in these cases that have been cited that that has been the case. I think that what the court was doing is the court was looking at these other cases and on a case-by-case basis, applying the facts of each case, the court was finding that what the debtor was trying to do was to be self-serving and recover money for itself. Again, we are not filing a lawsuit against LVNV to try to recover money. We are trying to maximize the return to the estate. And there are circuits all across the country that do allow for the confirmation process with the claims allowance afterward, and that's what we are promoting in this case, Your Honor. So thank you very much. Thank you very much. Mr. Bach, you have some time in rebuttal. I'll be very brief. Just to very briefly address the court's question, again, to the extent that I can, the plaintiffs under covert are not free to raise statutory objections after the court entered its confirmation orders, when those objections were known or should have been known. And so as the court stated in DNK, actions or claims arising after the plan by definition could not have been brought before the plan are not precluded by race judicata. So you don't have the same race judicata issues with a post-confirmation claim that is filed as you do with those that are filed before confirmation. And, of course, the issue is the confirmation. That is the bright line in a Chapter 13 case that is supposed to provide race judicata finality and certainty to the parties. And so that issue does not exist just as it wouldn't exist in circuit court or in any other court. We've talked about this, whether or not the claim is allowed. The difficulty for the creditor is there is no point at which the claim is allowed. Essentially, when a claim is filed, it is presumed to be valid, and it will be allowed unless an objection is filed. So, again, there's no other point other than the confirmation of the plan to sit there and say, well, the claim hasn't been allowed. Well, it is allowed. It is allowed right up until the moment when an objection is filed. And so this idea that, well, the claim hadn't been allowed, I think that's inconsistent with 11 U.S.C. 502, and that's important because, again, there's no other point at which a creditor can learn what its rights are, define what its rights are, take action in the bankruptcy with confidence of what its rights are, other than a planned confirmation. So with that, Your Honor's up. Thank you for your time. Thank you very much. We'll come down and greet counsel and then move on to our next case.
judges: G. Steven Agee, Barbara Milano Keenan, Stephanie D. Thacker